IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| MICHAEL MCGOWAN, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 3:14-cv-14-DGW |
| RICHARD HARRINGTON, ILLINOIS DEPARTMENT OF CORRECTIONS, ANGELA CRAIN, KIMBERLY BUTLER, JOHN TROST, DR. RITZ, GAIL WALLS, and ROBERT SHEARING, | ) | |
| Defendants. | ) | |

## ORDER

**WILKERSON, Magistrate Judge:**

Now pending before the Court are the Motion for Summary Judgment filed by Defendants Ritz and Trost (Doc. 290) and the Motion for Summary Judgment filed by Defendants Butler, Crain, Harrington, Walls, and Illinois Department of Corrections (Doc. 295). For the reasons set forth below, the first Motion (Doc. 290) is **GRANTED IN PART and DENIED IN PART** and the second Motion (Doc. 295) is **GRANTED IN PART and DENIED IN PART**.

### INTRODUCTION

Plaintiff, Michael McGowan, an inmate currently incarcerated at the Menard Correctional Center, is proceeding on an Amended Complaint filed on January 11, 2017 (Doc. 223). His claims are related to the medical care he has received with respect to his prosthetic leg and knee injury in addition to his living conditions. He claims that for a number of months, he was not given a prosthetic leg that fit correctly nor was he provided a cell that accommodated his needs in light of his disability. He is proceeding against medical personnel as to his constitutional claims and against the Illinois Department of Corrections (IDOC) as to his statutory claims. Pursuant to

his Second Amended Complaint, and a related Order (Doc. 222), Plaintiff is proceeding on the following counts:

> Count 1: Defendants Harrington, Butler, Shearing, Crain, Walls, and Trost violated the Eighth Amendment when they left Plaintiff in a cell that was not equipped for his handicap and when they refused to give him an assistive device;
>
> Count 2: All Defendants were deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment with respect to Plaintiff's prosthesis and/or the August 12, 2015 injury to his non-amputated right knee;
>
> Count 3: The IDOC violated Title II of the Americans with Disabilities Act of 1990, 42 U.S.C.A. § 12101 et seq., with respect to the conditions of Plaintiff's cell and the denial of an assistive device;
>
> Count 4: The IDOC violated the Rehabilitation Act, 29 U.S.C. §§ 794-94e, with respect to the conditions of Plaintiff's cell and the denial of an assistive device;
>
> Count 5: Injunctive relief with respect to an August 12, 2015 injury to his non-amputated right knee.

In addition, Warden Butler, in her official capacity, is retained in this suit in order to perfect any injunctive relief that may be ordered.

Summary judgment motions had already been filed and considered on Plaintiff's claims against Dr. Shearing (Doc. 175). Pursuant to the Court's previous Order, Plaintiff will proceed to trial on his claim in Count 1 and 2 that Dr. Shearing was deliberately indifferent to his medical needs. All Defendants, except Dr. Shearing seek summary judgment on the remaining claims.

## BACKGROUND

The following facts are undisputed. To the extent that there is a dispute, the facts are construed in a light most favorable to the Plaintiff. *Miller v. Gonzalez*, 761 F.3d 822, 826 (7th Cir. 2014).

Plaintiff is an above-the-knee amputee (left leg). The amputation occurred prior to his incarceration in 1991 and he has had a prosthesis that allows him to ambulate during much of his

incarceration. Plaintiff has problems with his prosthesis since at least 2007, a year after he was transferred to Menard CC; however, the claims in this matter began in 2012. On July 12, 2012, his prosthesis was confiscated by a supply clerk named Bosco, who is not a party to this lawsuit (SUF ¶ 60).[1] At one point during his incarceration, he was offered the opportunity to reside in the healthcare unit, where assistive devices for handicapped individuals is located, but he declined because he would not have access to a television, the law library, and other places around the prison (SUF ¶ 63). He received a second prosthetic leg on September 27, 2012 but, within a month, complained to Dr. Shearing that it was too long (SUF ¶ 66). The prosthesis was not repaired until October 29, 2013 (SUF ¶ 76). While Plaintiff was able to move about the prison, to the law library and the personal property storage area, he continued to have significant discomfort even after the repairs (SUF ¶¶ 77-79). When he was without his prosthesis, he was transported by wheelchair (SUF ¶ 80).

At times, Plaintiff was in pain and could not go to the dining area – he did not have a medical lay-in permit which would have allowed meals to be delivered to him (SUF ¶ 82). He did not suffer any health complications as a result. The South Lower cell, where he was housed, did not have handrails and he would use the wall or sink to maneuver to the toilet (SUF ¶¶ 84-87). Plaintiff subsequently received a new (third) prosthetic leg prior to his deposition on January 23, 2015 (SUF ¶ 91).

Defendant Harrington was the Warden at Menard CC until April 16, 2014 when Defendant Butler became the Warden (SUF ¶ 99). During the relevant time period, Defendants Crain and Walls were the Health Care Administrators and answered grievances regarding medical care (SUF ¶¶ 103, 109). In answering grievances, Walls and Crain would review medical records and

---

[1] Defendants' Trost and Ritz provided a statement of undisputed facts (Doc. 291) to which the IDOC Defendants added on (Doc. 296). References to the undisputed material facts include Plaintiff's responses thereto (Docs. 300, 303).

consult with medical providers (SUF ¶ 103). Neither Crain nor Walls have met or treated Plaintiff (SUF ¶¶ 102, 104, 110).

Plaintiff claims against Dr. Ritz and Dr. Trost arose after August 12, 2015 when Dr. Trost first treated him after he fell and injured his right knee (SUF ¶¶ 7-8). He was diagnosed with a twisted knee and dislocated patella. His patella was reset, pain medication was given, and an x-ray was ordered which was taken the same day (SUF ¶ 9). The x-ray reported unremarkable findings; Plaintiff saw Dr. Trost two days later for a follow up -- Dr. Trost did not examine his knee but prescribed an anti-inflammatory a few days later (SUF ¶ 13). In a subsequent follow up visit, on September 4, 2015, Dr. Trost did not examine Plaintiff but did order a medical lay-in so that food and other items would be brought to his cell and referred Plaintiff to collegial review for an orthopedic consultation (SUF ¶¶ 16-18). Dr. Ritz is a Utilization Management Physician, the person employed by Wexford Health Sources. Inc. to whom referrals from medical directors, like Dr. Trost, are forwarded. Dr. Trost and Dr. Ritz reviewed the recommendation in a "Collegial Review" around September 10, 2015 (SUF ¶ 20). They determined, because of the recent nature of the injury and the unremarkable x-ray which only showed some joint swelling, that conservative treatment would be offered: medication and physical therapy (SUF ¶ 20). Dr. Ritz did not independently evaluate Plaintiff, ensure that his recommendations were followed through, or otherwise provide Plaintiff any medical care (Plaintiff's statement of undisputed material facts (PSUF), Doc. 300, ¶¶4-6).

In November, 2015, another doctor (Dr. Caldwell) informed Plaintiff that he had ligament or tendon damage to his knee – in response to a grievance stating this, Dr. Trost again sought permission from Dr. Ritz for a radiographic study (SUF ¶ 21). The request was denied in lieu of additional physical therapy (SUF ¶ 21). The next month, the physical therapist indicated that he

may have a patella tendon tear and recommended "home" (i.e. not in the healthcare unit) exercises (SUF ¶ 22). The physical therapist, however, also suggested that if therapy does not work, consultation with a surgeon may be warranted (PSUF ¶ 8). Such a tear can heal without surgical evaluation and physical therapy is an appropriate treatment (SUF ¶ 23). Plaintiff's lay-in permit and pain medication was continued for 6 months (SUF ¶ 25).

Dr. Shah, who saw Plaintiff on January 23, 2016, also requested collegial review for an orthopedic evaluation (SUF ¶ 26). The request was apparently denied and Plaintiff was instead prescribed more rigorous physical therapy, 6 times a week in the healthcare unit (SUF ¶ 28). Shortly thereafter, on February 26, 2016, however, an MRI was approved and taken on March 17, 2016 (SUF ¶¶ 29-30). The MRI revealed a quadriceps tendon tear – such a tear is not visible externally, would not necessarily be revealed by an x-ray, and cannot readily be diagnosed by a general doctor (SUF ¶ 34). Six days later, Plaintiff was approved by Dr. Ritz for an orthopedic consultation which took place on May 3, 2016 (SUF ¶¶ 35-6). The consultant, Dr. Richard Morgan diagnosed delayed quadriceps repair of the right knee and recommended surgery (SUF ¶ 36). The parties agree that the surgery was reasonably delayed because Plaintiff required a repair of his prosthesis to prevent injury (SUF ¶ 38). Both the repair and the surgery were approved on May 11, 2016 (SUF ¶ 39).

After one price estimate of the prosthesis repair was given, a second estimate was requested on June 27, 2016 and subsequently approved on July 1, 2016 (SUF ¶ 40). The prosthesis was repaired by Hanger Clinic but had to be fixed again – during the repairs, Plaintiff was never without a prosthesis – he had his old one in his cell but could not always use it because it was faulty (SUF ¶¶ 41-42). After repairs were finished, Dr. Morgan requested a pre-op evaluation and surgery on the right knee was performed on November 21, 2016 (SUF ¶¶ 43-4).

Thereafter, Plaintiff was housed in the healthcare unit for 6 months and in a disability cell for the following 5 months (SUF ¶¶ 45-6). Plaintiff never requested a housing transfer to a disability cell after he was injured in August 2015 (SUF ¶ 47). Dr. Morgan saw Plaintiff in follow up visits, the last one being March 7, 2017 (SUF ¶ 48). Dr. Morgan considered the surgery a success (SUF ¶ 49) but full recovery would take one year (SUF ¶ 50). Plaintiff was assigned a wheelchair in June, 2017 (SUF ¶ 92).

## STANDARD

Summary judgment is proper only if the moving party can demonstrate "that there is no genuine issue as to any material fact and the movant is entitled to judgment as a matter of law." FEDERAL RULE OF CIVIL PROCEDURE 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). *See also Ruffin-Thompkins v. Experian Information Solutions, Inc.*, 422 F.3d 603, 607 (7th Cir. 2005); *Black Agents & Brokers Agency, Inc. v. Near North Ins. Brokerage, Inc.*, 409 F.3d 833, 836 (7th Cir. 2005). The moving party bears the burden of establishing that no material facts are in genuine dispute; any doubt as to the existence of a genuine issue must be resolved against the moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 160 (1970). *See also Lawrence v. Kenosha County*, 391 F.3d 837, 841 (7th Cir. 2004). A moving party is entitled to judgment as a matter of law where the non-moving party "has failed to make a sufficient showing on an essential element of her case with respect to which she has the burden of proof." *Celotex*, 477 U.S. at 323. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* The Seventh Circuit has stated that summary judgment is "the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of the events." *Steen v. Myers*, 486 F.3d 1017, 1022 (7th Cir. 2007) (quoting *Hammel v. Eau Galle Cheese Factory*, 407 F.3d 852, 859

(7th Cir. 2005) (other citations omitted)).

## DISCUSSION

**Count 1: Defendants Harrington, Butler, Shearing, Crain, Walls, and Trost violated the Eighth Amendment when they left Plaintiff in a cell that was not equipped for his handicap and when they refused to give him an assistive device.**

In a case involving conditions of confinement in a prison, two elements are required to establish violations of the Eighth Amendment's cruel and unusual punishment clause. *McNeil v. Lane*, 16 F.3d 123, 124 (7th Cir. 1993). The first objective element requires a showing that the conditions deny the inmate "the minimal civilized measure of life's necessities," creating an excessive risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Jackson v. Duckworth*, 955 F.2d 21, 22 (7th Cir. 1992). Second, Plaintiff must show that "prison officials acted with a sufficiently culpable state of mind." *Greeno v. Daley*, 414 F.3d 645, 652-653 (7th Cir. 2005) (citations and quotation marks omitted). Not all prison conditions trigger Eighth Amendment scrutiny—only deprivations of basic human needs like food, medical care, sanitation, and physical safety. *Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). Conditions of confinement may be considered in combination with each other when each standing alone would not violate the Eighth Amendment. *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006) (citing *Wilson v. Seiter*, 501 U.S. 294, 304 (1991)).

In response to Dr. Trost's motion for summary judgment, Plaintiff focuses on the medical care that was provided, a focus that is relevant to Count 2. However, Plaintiff does not squarely address how Dr. Trost was deliberately indifferent to Plaintiff's housing and assistive device needs. There is no evidence that Dr. Trost was aware that Plaintiff was having difficulty maneuvering around his cell nor is there any evidence that he had any control over Plaintiff's cell assignment. Moreover, there is no evidence that he was aware that Plaintiff required a device to

move around the prison. It is undisputed that Plaintiff had access to a wheelchair or his prosthesis after he injured his right knee and that he was given passes to lay-in – to stay in his cell and have food and other items brought to him. As such, there is no evidence that Dr. Trost was deliberately indifferent and summary judgment must be granted to Dr. Trost on Count 1.

As to the IDOC defendants, Harrington, Butler, Shearing, Crain, Walls, Plaintiff groups them together in making his argument that they were deliberately indifferent to Plaintiff's cell and assistive device needs. Such grouping is unhelpful because § 1983 liability hinges on individual culpability and requires personal involvement. *Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution."). In any event, he argues that they were aware that Plaintiff was unable to walk due to his right knee injury and that he was compelled to crawl on his hand and knees in order to get around through grievances. But, "the alleged mishandling of [plaintiff's] grievances by persons who otherwise did not cause or participate in the underlying conduct states no claim." *Owens v. Hinsley*, 635 F.3d 950, 953-54 (7th Cir. 2011).

It is undisputed that when he relayed his mobility issues to Defendant Butler through multiple emergency grievances, they were expedited as emergencies.[2] As such, it is undisputed that Warden Butler did *something* in the face of Plaintiff's complaints: she believed they were serious enough to warrant expedited review. It is further undisputed that when the grievances were investigated by Walls, she spoke to security personnel in order to determine whether Plaintiff was required to crawl in his prison cell (the officer indicated that he had not seen Plaintiff do that) and inquired as to his medical status (Doc. 300-9, p. 2). But there is no evidence that Defendant Crain was aware that Plaintiff was crawling on his hands and knees inside his cell or that he

---

[2] There is no evidence that Plaintiff informed Defendant Harrington of his cell conditions or lack of assistive device. Indeed, Defendant Harrington is only specifically mentioned in Plaintiff's brief on page 1.

required an assistive device (Doc. 296-5, p. 20; Doc. 300-1, p. 160-161). That these Defendants did not automatically and reflexively believe Plaintiff and accede to his demands does not establish deliberate indifference. *See Riccardo v. Rausch*, 375 F.3d 521, 527 (7th Cir. 2014) ("The Constitution does not oblige guards to believe whatever inmates say."). No jury would find that, upon learning of Plaintiff's claims and investigating them, Defendants acted unreasonably. In light of this finding, these Defendants are entitled to qualified immunity. The IDOC Defendants are entitled to judgment on Count 1.

### Count 2: All Defendants were deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment with respect to Plaintiff's prosthesis and/or the August 12, 2015 injury to his non-amputated right knee

The Supreme Court has recognized that "deliberate indifference to serious medical needs of prisoners" may constitute cruel and unusual punishment under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). In order to prevail on such a claim, Plaintiff must show first that his condition was "objectively, sufficiently serious" and second that the "prison officials acted with a sufficiently culpable state of mind." *Greeno*, 414 F.3d at 652-653.

The following circumstances could constitute a serious medical need: "The existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." *Hayes v. Snyder*, 546 F.3d 516, 522-23 (7th Cir. 2008) (quoting *Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997)); *see also Foelker v. Outagamie County,* 394 F.3d 510, 512-513 (7th Cir. 2005) ("A serious medical need is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention."). It is undisputed that Plaintiff had serious medical needs.

Second, a prisoner must show that prison officials acted with a sufficiently culpable state of mind, namely, deliberate indifference. "Deliberate indifference to serious medical needs of prisoners constitutes the 'unnecessary and wanton infliction of pain.'" *Estelle*, 429 U.S. at 104 (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)). "The infliction of suffering on prisoners can be found to violate the Eighth Amendment only if that infliction is either deliberate, or reckless in the criminal law sense." *Duckworth v. Franzen*, 780 F.2d 645, 652-53 (7th Cir. 1985). Negligence, gross negligence, or even "recklessness" as that term is used in tort cases, is not enough. *Id.* at 653; *Shockley v. Jones*, 823 F.2d 1068, 1072 (7th Cir. 1987). Put another way, the Plaintiff must demonstrate that the officials were "aware of facts from which the inference could be drawn that a substantial risk of serious harm exists" and that the officials actually drew that inference. *Greeno*, 414 F.3d at 653. "Whether a prison official had the requisite knowledge of a substantial risk is a question of fact subject to demonstration in the usual ways, including inference from circumstantial evidence, . . . and a fact finder may conclude that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Farmer*, 511 U.S. at 842. A plaintiff does not have to prove that his complaints of pain were "literally ignored," but only that "the defendants' responses to it were so plainly inappropriate as to permit the inference that the defendants intentionally or recklessly disregarded his needs." *Hayes* 546 F.3d at 524 (quoting *Sherrod v. Lingle*, 223 F.3d 605, 611 (7th Cir. 2000)). "Even if the defendant recognizes the substantial risk, he is free from liability if he 'responded reasonably to the risk, even if the harm ultimately was not averted.'" *Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) (quoting *Farmer*, 511 U.S. at 843).

Drs. Trost and Ritz argue that they responded appropriately to the injury to Plaintiff's right knee by examining him, providing various remedies (i.e. pain medication, anti-inflammatories,

diagnostic testing, and physical therapy), and ultimately approving surgery. Dr. Trost argues that he was not aware that Plaintiff had a quadriceps tendon tear as it would not be apparent to a general doctor and would not be revealed by an x-ray. Moreover, he argues that upon acquiring new information, from the physical therapist and the MRI performed on March 17, 2016, he changed his course of treatment. Thus, he was not deliberately indifferent to Plaintiff's medical needs even though his condition was initially misdiagnosed. Dr. Ritz's involvement was even more limited – he only was involved in the collegial process which granted or denied additional medical testing or procedures. Dr. Ritz argues that it is not relevant that there was a delay in properly diagnosing Plaintiff because after the diagnosis, immediate steps were taken to address Plaintiff's injury.

Defendants readily admit that they are not orthopedists and that Plaintiff's condition would not have been apparent to a non-specialist. As such, there is a question of fact, to be determined by a jury, as to whether they were deliberately indifferent for failing to refer him to a specialist shortly after his fall, in September 2015, and for delaying such a referral until May, 2016. It is true that "the choice whether to refer a prisoner to a specialist involves the exercise of medical discretion, and so refusal to refer supports a claim for deliberate indifference only if that choice is blatantly inappropriate." *Pyles v. Fahim*, 771 F.3d 403, 411 (7th Cir. 2014). There is evidence that both the manner of Plaintiff's injury and the signs and symptoms pointed to a particular type of injury; there is also evidence, however, that Dr. Trost did not examine Plaintiff in order to determine the true nature of his injury. Moreover, Dr. Trost recognized that Plaintiff's injury may have been beyond his ability to diagnose by recommending that he be seen by a specialist immediately after his injury. Dr. Trost cannot now claim that such are referral was not medically necessary when he, himself made such a request based on his medical judgment. And a jury may

also find that Dr. Ritz, who relied exclusively on Dr. Trost's (non-)examination and the x-ray further failed to appreciate the necessity of a specialist's opinion at the outset. Certainly, Plaintiff can argue that the 8 month delay in appropriate treatment "may constitute deliberate indifference if the delay exacerbated the injury or unnecessarily prolonged an inmate's pain" which he claims it did. *Perez v. Fenoglio*, 792 F.3d 768, 777-78 (7th Cir. 2015). Neither Dr. Trost nor Dr. Ritz are entitled to judgment on Count 2.

As to Harrington, Butler, Shearing, Crain, and Walls, Plaintiff's claim hinges on their review of grievances he submitted outlining the deficiencies in his cell, medical care, and his need for an assistive device. Non-medical defendants, can rely on the medical judgment of medical personnel. *Greeno v. Daley*, 414 F.3d 645, 655-656 (7th Cir. 2005) (quoting with approval *Spruill v. Gillis*, 372 F.3d 218, 236 (3rd Cir. 2004)). However, while a nonmedical official may rely on the competence of prison doctors, they "cannot simply ignore an inmate's plight." *Arnett v. Webster*, 658 F.3d 742, 755 (7th Cir. 2011); *see also Berry v. Peterman*, 604 F.3d 435, 440 (7th Cir. 2010); *Figgs v. Dawson*, 829 F.3d 895, 903 (7th Cir. 2016). If Plaintiff's communication to these Defendants "in its content and manner of transmission, gave the prison official sufficient notice to alert him or her to 'an excessive risk to inmate health or safety,'" they can be found to be deliberately indifferent to Plaintiff's serious needs. *Vance v. Peters*, 97 F.3d 987, 993 (7th Cir. 1996 (quoting *Farmer*, 511 U.S. 837). Defendants did not ignore Plaintiff's complaints. Rather, as set forth above, they expedited the investigation of his claims and provided a response, albeit one Plaintiff did not want. In order to show that prison officials acted with a sufficiently culpable state of mind, the plaintiff must put forth evidence that the prison officials knew that the prisoner's medical condition posed a serious health risk, but they consciously disregarded that risk. *Holloway v. Delaware Cnty. Sheriff*, 700 F.3d 1063, 1073 (7th Cir. 2012). There is no

evidence of conscious disregard – Plaintiff merely believes they should have done more. In finding for the IDOC Defendants on this point, the Court is conscious of the following:

> Bureaucracies divide tasks; no prisoner is entitled to insist that one employee do another's job. The division of labor is important not only to bureaucratic organization but also to efficient performance of tasks; people who stay within their roles can get more work done, more effectively, and cannot be hit with damages under § 1983 for not being ombudsmen. [Plaintiff's] view that everyone who knows about a prisoner's problem must pay damages implies that he could write letters to the Governor of Wisconsin and 999 other public officials, demand that every one of those 1,000 officials drop everything he or she is doing in order to investigate a single prisoner's claims, and then collect damages from all 1,000 recipients if the letter-writing campaign does not lead to better medical care. That can't be right. The Governor, and for that matter the Superintendent of Prisons and the Warden of each prison, is entitled to relegate to the prison's medical staff the provision of good medical care.

*Burks v. Raemisch*, 555 F.3d 592, 595 (7th Cir. 2009).

The IDOC could have reasonably relief on the prison doctors to do their job and treat Plaintiff's condition appropriately. In light of this conclusion, these Defendants are entitled to qualified immunity and consequently judgment on this claim.

> **Count 3: The IDOC violated Title II of the Americans with Disabilities Act of 1990, 42 U.S.C.A. § 12101 et seq., with respect to the conditions of Plaintiff's cell and the denial of an assistive device; and,**
>
> **Count 4: The IDOC violated the Rehabilitation Act, 29 U.S.C. §§ 794-94e, with respect to the conditions of Plaintiff's cell and the denial of an assistive device;**

Title II of the ADA states "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132. Similarly, the Rehabilitation Act prohibits discrimination against qualified individuals based on a physical or mental disability. *See* 29 U.S.C. §§ 794-94e; *Jaros v. Illinois Dep't of Corr.*, 684 F.3d 667, 671–72 (7th Cir. 2012). The relief available to a plaintiff under the

Rehabilitation Act is coextensive. Compare 29 U.S.C. § 794A with 42 U.S.C. § 12117 (both incorporating 42 U.S.C. § 2000e–5 for private right of action); *see Barnes v. Gorman*, 536 U.S. 181, 189 & n. 3, (2002). And, with respect to this lawsuit, the analysis governing each statute is the same except that the RA includes as an additional element the receipt of federal funds, which all states accept for their prisons. *See Cutter v. Wilkinson*, 544 U.S. 709, 716 n. 4,(2005); *Gratzl v. Office of Chief Judges*, 601 F.3d 674, 678 (7th Cir. 2010); *Foley v. City of Lafayette, Ind.*, 359 F.3d 925, 928 (7th Cir. 2004); *Ozlowski v. Henderson*, 237 F.3d 837, 842 (7th Cir. 2001).

A plaintiff will make out a prima facie case of discrimination under the ADA or RA by showing they: (1) suffer from a disability as defined in the statute, (2) are qualified to participate in the program in question, and (3) were either excluded from participating in or denied the benefit of that program based on a disability. *Novak v. Bd. of Trustees of S. Ill. Univ.*, 77 F.3d 966, 974 (7th Cir. 2015) (citing *Jackson v. City of Chicago*, 414 F.3d 806, 810 (7th Cir. 2005)). "Refusing to make reasonable accommodations is tantamount to denying access." *Jaros*, 684 F.3d at 672. In considering what standard should be applied to establish discrimination, the Seventh Circuit has equated it with the Eighth Amendment deliberate indifference standard. *Lacy v. Cook County, Illinois*, 897 F.3d 847, 863 (7th Cir. 2018). There is no dispute that Plaintiff is a person with a disability. However, as set forth above and on this record, there also is no showing that the IDOC Defendants, the final policy making persons (i.e. the Wardens or Director ), were deliberately indifferent to Plaintiff's needs. They considered his needs, investigated them, and determined that nothing further was required. Thus, there is no showing of intentional discrimination.

Plaintiff states that in making an ADA claim, he is not complaining about the adequacy of his medical care. Nor can he, the ADA is not a substitute for medical negligence or the Eighth Amendment claim above. *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996). Rather he

claims that he was unable to walk around his cell due to his injury and problems with his prosthesis and that while he "was not wholly denied the use of a toilet or a sink because of his disability, his means of accessing them – on his hands and knees – is not in the spirit of the ADA" (Doc. 301, p. 13). There is no claim that Plaintiff was unable to access the dining hall, that he was unable to access exercise opportunities, that he was unable to access the law library, or the property room. That is, there is no claim that he was unable to move around adequately outside of his cell.

While access to showers, meals, and toilet facilities are considered a "program or activity" within the meaning of the ADA, *Jaros*, 684 F.3d at 672 (noting that inmate access to showers and meals is a program or activity); *see Phipps v. Sheriff of Cook Cty.*, 681 F.Supp.2d 899, 916 (N.D. Ill. 2009) (collecting cases holding that "showering, toileting, and lavatory use were regarded as programs and/or services under the ADA"), no reasonable jury would find that the IDOC intentionally discriminated against Plaintiff in providing the same. Plaintiff's statutory claims fail as a matter of law.

**Count 5: Injunctive relief with respect to an August 12, 2015 injury to his non-amputated right knee.**

Finally, Plaintiff asserts a claim for injunctive relief. The record in this matter does not contain Plaintiff's currently medical status or his need for additional care for his prosthesis or his right knee. As such, the Court is unable to determine, at this juncture, whether Plaintiff is or is not entitled to injunctive relief. Such relief will be considered at trial.

## CONCLUSION

For the foregoing reasons, the Motion for Summary Judgment filed by Defendants Ritz and Trost (Doc. 290) is **GRANTED IN PART and DENIED IN PART** and the Motion for Summary Judgment filed by Defendants Butler, Crain, Harrington, Walls, and Illinois Department of Corrections (Doc. 295) **GRANTED IN PART and DENIED IN PART** (Doc. 295).

Judgment is **GRANTED** in favor of Harrington, Butler, Crain, Walls, and Trost on Count 1, judgment is **GRANTED** in favor of Harrington, Butler, Crain, and Walls on Count 2, judgment is **GRANTED** in favor of the IDOC on Counts 3 and 4. Judgment is **DENIED** in all other respects. In light of the foregoing, Plaintiff shall proceed to trial on the following claims:

> Count 1: Defendant Shearing violated the Eighth Amendment when he left Plaintiff in a cell that was not equipped for his handicap and when he refused to give him an assistive device;
>
> Count 2: Defendants Shearing, Trost and Ritz were deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment with respect to Plaintiff's prosthesis and/or the August 12, 2015 injury to his non-amputated right knee;
>
> Count 5: Injunctive relief with respect to an August 12, 2015 injury to his non-amputated right knee.

Defendant Butler is retained in this lawsuit to perfect any injunctive relief that may be ordered. The Clerk shall enter judgment accordingly at the conclusion of this matter. This matter is **SET** for a telephonic Status Conference on October 18, 2018 at 3:00 p.m. Dr. Trost to initiate the conference call. The parties should be prepared to discuss the trial schedule.

**DATED: September 27, 2018**

*/s/ Donald Wilkerson*

    **DONALD G. WILKERSON**
    **United States Magistrate Judge**